# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ALEXANDRA RIKAS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-cv-2069 |
| | ) | |
| Officer THOMAS BABUSCH, Badge #908, | ) | Judge Sharon Johnson Coleman |
| Officer SAUL SALAMANCA, Badge #971, | ) | |
| and NORTHEAST ILLINOIS REGIONAL | ) | |
| COMMUTER RAILROAD | ) | |
| CORPORATION (a/k/a METRA), | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alexandra Rikas ("Rikas") filed a complaint alleging excessive force, unlawful arrest, and battery claims against Metra police officers Thomas Babusch ("Babusch") and Saul Salamanca ("Salamanca"). The complaint also alleges that Metra is legally obligated to indemnify Babusch and Salamanca and is liable for their alleged constitutional violations pursuant to *Monell* liability. This Court granted Defendants' motion to dismiss the *Monell* liability claim and the battery claim as to Salamanca. Defendants now move for summary judgment on all the remaining claims against them. For the reasons stated below, the Court denies the motion.

**Background**

While the parties dispute most of the specifics regarding the events which gave rise to this suit, the following core narrative is undisputed: On May 8, 2012, Rikas and her then-boyfriend David Hakala ("Hakala") took a Metra train from Joliet to Chicago. (Dkt. 109, ¶ 7; Dkt. 109-1 at 9-10; Dkt. 118, ¶ 7). Around midnight that night, Rikas and Hakala entered the LaSalle Street Station in Chicago and boarded a return train to Joliet. (Dkt. 109, ¶¶13, 17; Dkt. 118, ¶¶ 13, 17). Babusch and Salamanca, Metra police officers, boarded the train that Rikas and Hakala had boarded and Babusch

stated that Rikas and Hakala needed to leave the train. (Dkt. 109, ¶ 23; Dkt. 109-2 at 63; Dkt. 118, ¶23). Rikas and Hakala exited the train. (Dkt. 109, ¶ 30; Dkt. 118, ¶ 30). After Rikas was off the train but still in the station, Babusch arrested Rikas. (Dkt. 119, ¶ 34; Dkt. 121, ¶ 34). Rikas was charged with trespass but was found not guilty. (Dkt. 119, ¶ 35; Dkt 121 ¶ 35).  Rikas sustained some bruising and dental injuries the evening of her arrest. (Dkt, 109, ¶ 47; Dkt. 118, ¶ 47).[1]

**Legal Standard**

Summary judgment is appropriate if the evidence shows that there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Because in police misconduct cases there are often factual disputes which preclude a determination of the reasonableness of the conduct at issue, motions for summary judgment are to be granted "sparingly." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

**Discussion**

*Unlawful Arrest*

Defendants assert that they are entitled to summary judgment on the unlawful arrest claim because there was probable cause, or at least arguable probable cause, to arrest Rikas. Incredibly, Defendants argue for pages as to the existence of probable cause without ever identifying the offenses for which they maintain probable cause existed.

The question of arguable probable cause necessarily hinges on the elements of the underlying criminal offense, *Abbott v. Sangamon Cty.,* 705 F.3d 706, 715 (7th Cir. 2013), which must be either the offense the officer cited at the time of arrest or one that is "closely-related," *Williams v. Jaglowski*, 269

---

[1] With respect to Defendants' challenge to Rikas' presentation of material facts, the Court agrees that Rikas' Rule 56 response and statement of additional facts contained some improper matter. Accordingly the Court considered Rikas' responses to the extent they identified a disputed fact, where the citation to the record supported that such a dispute exists. The Court did not consider any improper legal argument or additional facts contained in Rikas' Rule 56 response. To the extent Rikas used her statement of additional facts to merely re-characterize a fact originally proffered by Defendants, the Court relied on the citations to the record rather than the parties' characterization of the facts and considered facts undisputed rather than additional where appropriate.

F.3d 778, 783 (7th Cir. 2001). Without an underlying offense to refer to, this Court cannot make an arguable probable cause determination.

Equally baffling is Defendant's reliance on Rikas's deposition testimony that the judge at her criminal trial said something to the effect of "there were five or six other criminal charges that [Rikas] should have been charged with." The Court finds no probative value in Rikas' testimony as to the judge's remark with respect to establishing arguable probable cause in this case. It is impossible to discern the context in which this remark was made, e.g., if it was a formal finding or an offhand comment. Furthermore, because Rikas was found not guilty and thus had no opportunity to appeal any of the criminal courts' findings, even a formal ruling in the criminal matter that there was probable cause does not bar *de novo* consideration of the issue by this Court. *People v. Sutherland*, 860 N.E.2d 178, 197 (2006).

*Excessive Force*

Defendants argue that Babusch and Salamanca are entitled to qualified immunity on the excessive force claim because Rikas has failed to produce a closely analogous case establishing her right to be free from the type of force used on her. As to the merits of the claim, Defendants argue that Babusch's level of force was reasonable under the circumstances.

A plaintiff may defeat a qualified immunity defense to an excessive force claim by "(1) pointing to a closely analogous case that established a right to be free from the type of force the police officers used on him, or (2) showing that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." *Chelios v. Heavener*, 520 F.3d 678, 691 (7th Cir. 2008). Defendants are correct that Rikas has failed to point to a "closely analogous case" indicating a clearly established right. Instead Rikas merely states that "[t]here are many examples of similar claims" and notes that Babusch was previously sued for excessive force. As has been addressed more than once in these proceedings,

there was no judicial finding as to liability in the prior suit against Babusch because the case was dismissed pursuant to a settlement agreement before any dispositive motions were filed. For this reason, Rikas' argument that the prior suit against Babusch is relevant to the question of qualified immunity is meritless and borders on frivolous.

Nonetheless Rikas may still show that the force Babusch used was "so plainly excessive" that any reasonable officer would have known using such force would violate the Fourth Amendment. Summary judgment on the question of whether use of force in a particular case is "so plainly excessive" is not appropriate if there are material factual disputes as to the level of force exerted. *Chelios*, 520 F.3d at 692. Such a dispute exists here, particularly as to the level of force Babusch used when initiating the arrest.

For their version of the initial arrest, Defendants point to the eyewitness account of Daniel Carrillo, a bystander who testified that Babusch "put [Rikas] to the ground" in order to get handcuffs on her. (Dkt. 109, ¶ 34). Rikas in turn relies on the account of David Hakala, who testified that Babusch "ripped" Rikas from Hakala's grasp and "threw her down." (Dkt. 118, ¶ 34, Dkt. 119, ¶ 26). Carrillo's description that Rikas was "put . . . to the ground" tells the Court very little about the level of force exerted. Clearly, a material factual dispute exists regarding the level of force Babusch applied when arresting Rikas. This dispute precludes a grant of summary judgment on the excessive force claim. As both of Rikas' federal claims survive, the Court will continue to exercise supplemental jurisdiction over the state law claims.

**Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment [108] is denied.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: January 28, 2016